UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACI HAMILTON, individually and as Guardian Ad Litem for minor Plaintiffs PHH, JNH, JDH, NHH, MHH, and RICKY HAMILTON,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SOLANO, EDWARD MILLER, KATHERINE MEDRANO, MAGIE CHIANG, REBECCA CURCURO, CITY OF VACAVILLE, and DOES 1 – 20, inclusive,<br><br>Defendants. | No. 2:19-cv-01804-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs Traci Hamilton (individually and as guardian ad litem for minor Plaintiffs PHH, JNH, JDH, NHH, MHH) and Ricky Hamilton (collectively "Plaintiffs") seek to recover damages from Defendants County of Solano ("County"), City of Vacaville ("City"), Edward Miller ("Miller"), Katherine Medrano ("Medrano"), Magie Chiang ("Chiang"), Rebecca Curcuro ("Curcuro"), Carly Hamilton,[1] Denise Rochlitz ("Rochlitz"), Lusette Okada ("Okada"), Alexandria Scandalia-Dempsey ("Scandalia-Dempsey"), Desiree English ("English"), Detective Dayna Hardwick ("Hardwick"), Katie

---

[1] Hereafter referred to as "Carly Hamilton" to avoid confusion with the Plaintiffs.

1

Lopez ("Lopez"), Officer Shehan ("Shehan"), and Lieutenant Keith Hopper ("Hopper"), along with an unknown number of Doe Defendants (collectively "Defendants"), for violation of rights to familial association; unlawful seizure; judicial deception; intentional infliction of emotional distress; false imprisonment; negligence and negligence per se; and Monell liability.  See First Amended Complaint, ECF No. 13 ("FAC").  According to Plaintiffs, they suffered injuries when the children were taken from their mother Traci Hamilton's custody on two occasions.

Presently before the Court are two Motions to Dismiss: (1) one filed by "City Defendants," which includes the City, Hardwick, Lopez, Shehan and Hopper (ECF No. 17) ("City's Motion"); and (2) one filed by "County Defendants," which includes the County, Miller, Medrano, Chiang, Curcuro, Carly Hamilton, Rochlitz, Okada, Scandalia-Dempsey, and English (ECF No.18) ("County's Motion").[2]  Plaintiffs timely opposed both Motions, and Defendants timely replied.  ECF Nos. 20-23.  For the reasons that follow, both Motions are GRANTED.[3]

## BACKGROUND[4]

### A.   2019 Incident[5]

Plaintiff Traci Hamilton ("Traci") is the mother to six children ("the children"), including the five minor plaintiffs and Ricky Hamilton (an adult as of the filing of the original Complaint).  At all relevant times, Traci and the children lived in a home with the children's father, Nathaniel Hamilton ("Nathaniel").  On January 13, 2019, PHH texted

---

[2] In their FAC, Plaintiffs have chosen not to reassert their seventh and eighth causes of action. See FAC, ¶ 198-99.  Those causes of action are thus no longer before the Court.  To the extent Defendants move to dismiss those claims, their arguments are accordingly DENIED as moot.

[3] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  ECF No. 19; see E.D. Cal. Local Rule 230(g).

[4] The following statement of facts is based on the allegations in Plaintiffs' FAC.

[5] The Court recounts the relevant background facts in reverse-chronological order, addressing the more recent incident first, because Plaintiffs have done so in the FAC.

Traci, who was not at home, telling her that Nathaniel had hit her.  Traci returned to the house and called the Vacaville Police Department ("VPD"), who responded and spoke to the PHH.  VPD declined to arrest the father, but he nonetheless agreed to leave the home for the night, and PHH stayed with family members.

The following day, PHH informed Traci that her father had been sexually abusing her for several months, after which Traci and PHH confronted Nathaniel, with Traci threatening to call the police.  Apparently enraged, Nathaniel attacked Traci with a knife, stabbing her in the neck and stabbing PHH during the melee.  Nathaniel then threatened to kill everyone in the home, retrieved a gas can from the garage, poured gasoline around the house, set it on fire, and fled the scene.  Traci and all of the children were able to escape the burning building.

VPD and Child Protective Services ("CPS") personnel, including Hardwick and Hopper, responded to the scene.  Traci and two children were taken to the hospital for medical care, while the four remaining children were taken to the VPD station.  In the meantime, shortly after Nathaniel fled the burning house, he was killed, thus eliminating any threat he posed to the children.

On January 15, 2019, Hardwick interviewed PHH, who was still hospitalized.  According to Plaintiffs, VPD personnel Hardwick and Hopper, along with County personnel English, Miller, and Medrano, then agreed to take the children into custody even though they had not sought a warrant.  Various adult relatives or other potential caretakers were present and willing to take the children, but CPS and VPD personnel arranged for them to be transported to foster homes instead.  Later that day, Miller conducted further interviews with the children, two VPD detectives, and Traci as well.

On January 16, 2019, Miller signed and Medrano approved a Detention Report, setting forth the reasons for removal of the children and the social worker's recommendations, which, as relevant here, was to keep the children in foster care.  According to Plaintiffs, the report was flawed because it omitted that Nathanial no longer posed a threat and that various adults had offered to take the children.

On January 18, 2019, the juvenile court held a detention hearing. Following the hearing, an adult female believed by Plaintiffs to be CPS employee Scandalis-Dempsey transported Plaintiffs JDH and NHH back to their foster homes. On February 6, 2019, Traci was released from the hospital, and eventually, on April 5, 2019, the juvenile court ordered the children returned to Traci.

### B.    2015 Incident

Previously, on December 1, 2015, CPS and VPD personnel (including named and Doe Defendants) had responded to 1253 Alderwood Way, Vacaville, to investigate the children's housing conditions. Those personnel determined that the house was unlivable, lacked running water, was infested with insects and pests, and was dangerous and unsanitary. Plaintiffs allege that they informed Defendants that they did not live in the home. CPS personnel nonetheless took custody of five of the children without a warrant, allowing Ricky to go with a maternal aunt. Traci was arrested at the scene.

Lopez prepared a police report regarding the incident, and Rochlitz prepared a Detention Report, which was signed by Okada. Both reports were submitted to the juvenile court for consideration. The juvenile court initially ordered that the children remain in custody, but it later dismissed the case. Plaintiffs now allege that the police report and Detention Report contained material falsehoods and omissions and they raise a number of claims arising out of all of the foregoing events, all of which Defendants move to dismiss.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the

4

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotation marks omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotation marks omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

**A.     Claim One: Violation of Rights to Familial Association (2019)**

Plaintiffs first assert a claim against City employees Hardwick and Harper and County employees English, Miller, and Medrano under 42 U.S.C. § 1983 for violating the rights of familial association under the Fourth and Fourteenth Amendments for the removal of the children in 2019.  The Court addressed substantially similar arguments with regards to the sufficiency of Plaintiffs' original Complaint, reasoning:

> Plaintiffs fail to sufficiently state claims under both the Fourth and Fourteenth Amendments. Regarding the 2019 Removal, Plaintiffs failed to establish there was no reasonable cause to believe the children were in imminent danger at the time of separation.  Given the facts surrounding the stabbings, arson, and hospitalizations of Traci and one of her children, there clearly was an emergency at the time [County] Defendants took temporary custody of the minors.  Plaintiffs argue that Nathaniel was killed shortly after he fled the home, thus the threat to the children was eliminated; however, there is nothing to suggest that [County] Defendants were aware of Nathaniel's death when they took the children.

6

ECF No. 12, at 8 (footnote omitted).  The allegations in the FAC are materially the same and the Court thus concludes once again that Plaintiffs have failed to state a claim.

Indeed, Plaintiffs' only new averments are conclusory statements going to Defendants presumed "knowledge" that there was purportedly time to obtain a warrant or that Nathaniel no longer posed a threat and that because "the children were safely out of the fire," there were no exigent circumstances remaining.[6]  FAC, ¶¶ 119-20.  These allegations are undermined, however, by Plaintiffs' own recitation of the facts.  According to Plaintiffs, PHH had just revealed that she had suffered ongoing sexual abuse, PHH and Traci had barely survived a knife attack, the entire family had narrowly escaped their burning home, and Traci remained hospitalized.  These facts, taken together, establish reasonable cause to remove the children from Traci's custody.  See, e.g., Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000) (collecting cases).  Accordingly, Plaintiffs have failed to state a claim as to how Defendants actually or proximately caused any of their injuries.  Given the rapidly evolving, violent and chaotic situation from which these children were removed, and the fact that Plaintiffs apparently cannot allege additional facts capable of stating a claim, further amendment would be futile.  Plaintiffs' first cause of action is DISMISSED without leave to amend.

**B.     Claim Two: Violation of Rights to Familial Association (2015)**

Defendants contend, very generally, that they weren't involved in the 2015 removal of the children and regardless the seizure was reasonable in any event.  This Court agrees.

Plaintiffs acknowledge that when Defendants inspected their home in 2015, it was unlivable with no running water, infestations, and other unsanitary conditions, and Traci was arrested at the scene.  The arrest, in conjunction with the admittedly atrocious conditions of the home, establish not only reasonable cause to believe that seizure of

---

[6] Even if Defendants were aware that Nathaniel had been killed, it would have still been reasonable, based on the hectic and violent situation unfolding in real-time, to determine that the children were safer in government custody, especially since Traci remained hospitalized with grave injuries.  See, e.g., Keates v. Koile, 883 F.3d 1228, 1237-38 (9th Cir. 2018).

the children was necessary, but that immediate seizure was required. See Gomes v. Santa Clara Cty., No. 5:18-CV-04191-EJD, 2020 WL 4747901, at *8 (N.D. Cal. Aug. 17, 2020) (distinguishing Rogers v. Cty. of San Joaquin, 487 F.3d 1288 (9th Cir. 2007), on its facts and finding that exigencies existed to justify warrantless removal); cf. Rogers, 487 F.3d at 1293 (providing no indication that the parents were arrested during the seizure of children).

Furthermore, while Plaintiffs aver that Traci and the children did not in fact live in the home, they also allege that the truck full of their possessions was towed from the front of the residence, indicating that if they weren't living there now, it was because they were just leaving. Regardless, it was reasonable for Defendants to infer that Plaintiffs were residing there and to conclude that the conditions warranted removal.

As with the first cause of action, despite being granted the opportunity to amend, Plaintiffs have still failed to allege that Defendants acted in an objectively unreasonable manner in taking custody of the children in the face of exigencies presented. Further amendment would thus be futile and Defendants' Motions to Dismiss the second cause of action are GRANTED without leave to amend.

### C. Claims Three and Four: Unlawful Seizure

Defendants next contend that Claims Three and Four fail with Claims One and Two because the seizure of the children was objectively reasonable under the circumstances. For the reasons already stated, the Court agrees. See Loftis v. Ramos, No. 16-CV-02300-MMA (MSB), 2019 WL 1040333, at *10 n.10 (S.D. Cal. Mar. 5, 2019). The Court also further finds that no additional amendment will cure these deficiencies. Accordingly, Plaintiffs' third and fourth causes of action are DISMISSED without leave to amend as well.

### D. Claims Five and Six: Judicial Deception

Defendants move to dismiss these claims in the FAC on the basis that Plaintiffs have not alleged they made any material misrepresentations or omissions or how any such statements or omissions would have been material. They further contend that

8

Plaintiffs have once again failed to state a claim because they do not allege the existence of any judicial removal order pertaining to the 2019 removal of the children. In its previous Order, this Court dismissed Claims Five and Six with leave to amend, advising:

> To state a claim for judicial deception under § 1983, the plaintiff must show that the investigator made deliberately false statements or recklessly disregarded the truth and that the falsifications were material. Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002). A statement is "material to the granting of [a] removal order if the juvenile court would have declined to issue the order had [the defendant] been truthful." Sigal v. Cty. of Los Angeles, No. 2:17-CV-04851-RGK-AGR, 2018 WL 5899636, at *4 (C.D. Cal. Jan. 17, 2018); Butler v. Elle, 281 F.3d 1014, 1026 (9th Cir. 2002).
>
> Regarding both the 2015 and 2019 Removals, Plaintiffs fail to demonstrate that these alleged lies, misrepresentations, or omissions were material to the granting of a removal order or that the juvenile court would not have issued the removal order had the information been truthful.

ECF No. 12, at 9 (footnote omitted). This same reasoning remains applicable because the material facts set forth in the FAC are largely unchanged.

First, the FAC is silent as to whether any judicial removal order was issued in 2019 in the first place. If a 2019 judicial order of removal existed, Plaintiffs should have been able to allege such facts in their FAC, especially after specifically being put on notice by the Court that this is a critical issue. See ECF No. 12, at 9. Absent such an order, the Court struggles to determine the materiality of any lies or omissions, assuming they exist, and how they impacted removal proceedings.

Regardless, none of the "deceptions" purportedly identified by Plaintiffs appear to be either false or material. Government officials opined that Traci failed to protect her children and needed help doing so, which based on the facts set forth above, was a reasonable assessment in both 2015 and 2019. Although Plaintiffs contend Defendants should have notified the courts that other adults were offering to take the children, there is nothing in the FAC from which the Court might infer that it was unreasonable to place the children with known foster parents rather than unknown persons who happened to

be at the scene.  Other than that, Plaintiffs just refer generally and without elaboration to the existence of some unidentified "material misrepresentations or omissions" or do not allege any facts to indicate that individual Defendants had any interactions with a court.

Despite having been granted the opportunity to amend, Plaintiffs have failed to expand on their original allegations in any useful way.  Nor do they contend there is anything further they might add that would change the Court's conclusion.  Accordingly, Defendants' Motions to Dismiss Plaintiffs' Fifth and Sixth Claims are GRANTED without leave to amend.

### F.    Claims Twelve and Thirteen: Monell Liability

Plaintiffs' claims against the entity Defendants fail with the underlying constitutional causes of action.  Municipalities and local officials cannot be vicariously liable for the conduct of their employees under § 1983, but rather are only "responsible for their own illegal acts."  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 665-83 (1978)).  In other words, a municipality may only be liable where it individually caused a constitutional violation via "execution of government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Monell, 436 U.S. at 694.  "To establish municipal liability under Monell, [a plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation."  Lockett v. Cty. of Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020).  "Monell claims thus require a plaintiff to show an underlying constitutional violation."  Id.

Because Plaintiffs have failed to adequately allege a predicate constitutional violation against the County or the City, their Monell claims fail as well  See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.");

Capp v. Cty. of San Diego, 940 F.3d 1046, 1061 (9th Cir. 2019).  Accordingly, Claims Twelve and Thirteen are DISMISSED without leave to amend.

### G.   Claims Nine, Ten, and Eleven: State law claims

Plaintiffs' federal claims having been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law causes of action. Those claims are hereby DISMISSED.

## CONCLUSION

In consideration of the foregoing, Defendants' Motions to Dismiss (ECF Nos. 17, 18) are GRANTED consistent with the foregoing.  All of Plaintiffs' federal claims are DISMISSED without leave to amend, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law causes of action.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  April 23, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE